UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRE MARINER MARCO TOWN
CENTER, LLC, a Delaware
limited liability company,

      Plaintiff,

v.                      Case No: 2:15-cv-284-FtM-29CM

ZOOM TAN, INC., a Florida
corporation,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on cross Motions for Summary Judgment (Docs. ##45, 46), both filed on December 29, 2015. Responses (Docs. ##49, 52) were filed on January 11, 2016 and January 12, 2016, respectively.[1] The Court's jurisdiction is premised upon complete diversity of citizenship. (Doc. #68.)

Plaintiff is a landlord who seeks damages because its tenant failed to pay rent and other amounts due pursuant to a written rental agreement. The defendant-tenant asserts a variety of affirmative defenses which, it asserts, justified its non-payment.

---

[1] Also before the Court is plaintiff's Unopposed Request for Judicial Notice (Doc. #51), filed on January 12, 2016, and plaintiff's Unopposed Second Request or Judicial Notice (Doc. #59), filed on March 24, 2016. The Court grants these requests and takes judicial notice of the City of Marco Island Code of Ordinances sections 30-4, 30-9, 30-64, 30-221, 30-226, 30-241 through 30-247, and 30-488 pursuant to Fed. R. Evid. 201.

For the reasons set forth below, plaintiff's summary judgment motion is granted and defendant's summary judgment motion is denied.

## I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment."

St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).   "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."   Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

The undisputed material facts are as follows:   Bre Mariner Marco Town Center, LLC ("BRE" or "plaintiff" or "landlord") owns property known as the Marco Town Center, a shopping center on Marco Island, Florida.   Zoom Tan, Inc. ("Zoom Tan" or "defendant" or "tenant") operates and maintains tanning salons in multiple states. (Doc. #23, ¶ 5; Doc. #25, ¶ 5.)   In January of 2013, Zoom Tan was negotiating leases at five separate locations with Brixmor Property Group, Inc., an entity related to plaintiff.   As relevant to this case, Zoom Tan approached the landlord about leasing Store #9, Building Unit 612401, Marco Town Center, 1017 N. Collier Blvd., Marco Island, Florida 34145 ("the Demised Premises," "Premises," or "Property") to use as a tanning salon.   (Doc. #45, ¶ 15; Doc.

#46, ¶ 2; Doc. #49, ¶ 15.)  Zoom Tan knew the Premises was occupied by an existing tenant (Doc. #45, ¶ 16; Doc. #49, ¶ 16) whose lease would not be renewed if Zoom Tan obtained a lease agreement.

On March 22, 2013, the parties entered into a 75-page lease agreement by which the landlord rented the Premises to Zoom Tan for a 60 month term (the "Lease Agreement").  (Doc. #45, ¶ 18; Doc. #45-1, pp. 8-58; Doc. #46-1, pp. 57-115.)  Plaintiff's prior tenant still occupied the Property at the time, and continued to do so until about July 27, 2013.  (Doc. #45, ¶¶ 22-24; Doc. #49, ¶ 22.)

On August 5, 2013, Zoom Tan submitted a Commercial Addition/Alteration Building Permit Application (Application) to the City of Marco Island in order to commence its improvements to the Premises.  (Doc. #45, ¶ 30; Doc. #45-1, pp. 67-70; Doc. #46-1, pp. 116-19; Doc. #49, ¶ 30.)

On August 6, 2013, BRE gave notice to Zoom Tan that it was tendering possession of the Premises to Zoom Tan as of August 7, 2013.  (Doc. #45-1, p. 72; Doc. #46-1, p. 120.)  Under the terms of the Lease Agreement, Zoom Tan was required to take possession of the Premises on this date (Section 1.01 "Possession Date" definition[2]), and the term of the Lease Agreement began 90 days

---

[2] The full definition of "Possession Date" is "[t]he date Landlord makes the Demised Premises available to Tenant.  Tenant shall take possession of the Demised Premises on the Possession Date." (Doc. #46-1, p. 62.)

thereafter (Section 1.10, "Commencement Date" definition[3]).  From the date the Landlord made the Premises available to Zoom Tan (August 7, 2013), Zoom Tan was required to comply with all governmental laws, orders and regulations affecting the Premises at its own expense.  Section 6.04, Lease Agreement.[4]

On August 30, 2013, Zoom Tan's Application was denied by the City of Marco Island. (Doc. #45-1, p. 74; Doc. #46-1, p. 121.) The reason provided for the denial was that "the use [Zoom Tan] plan[s] to operate at the above-mentioned address is not permitted in the city's C-4 zoning code." (Id.) The City of Marco Island's Zoning Regulations do not explicitly prohibit tanning salons

---

[3] The full definition of "Commencement Date" is "[t]he Commencement Date of the Lease Term of this Lease shall be the earlier of: (1) Ninety (90) days after the 'Possession Date' (as hereafter defined); or (ii) the date upon which Tenant opens for business at the Demised Premises." (Doc. #46-1, p. 62.)

[4] Section 6.04 provides in full:

From and after the date Landlord makes the Demised Premises available to Tenant, Tenant shall, at its own cost and expense:  (i) comply with all governmental laws, orders and regulations affecting the Demised Premises now or hereafter in force including, without limitation, the Americans With Disabilities Act; (ii) comply with and execute all rules, requirements, and regulations of the Board of Fire Underwriters, Landlord's insurance companies and other organizations establishing insurance rates; and (iii) not suffer, permit or commit any waste or nuisance.  Tenant shall not perform any acts or carry on any practices which may injure the building or be a nuisance or menace to other tenants or the public.

(Doc. #46-1, p. 73.)

within the C-4 zoning district (Doc. #46, ¶ 26; Doc. #51), and Zoom Tan was aware that another tanning salon across the street from its unit was also within the C-4 zoning code.  Zoom Tan took no formal steps to challenge the City's denial.  Upon notification that the intended use of the Premises was in violation of the zoning regulations, Zoom Tan notified BRE.  (Doc. #46, p. 147.) Zoom Tan did not take possession of the Premises, nor did Zoom Tan pay the rent or other amounts due under the Lease Agreement.  (Doc. #45, ¶ 37; Doc. #46, ¶ 17.)  In response to the non-payment of rent, BRE elected to invoke an acceleration clause, treating certain rent as immediately due and payable (Doc. #45, ¶ 38; Doc. #49, ¶ 38), and sent Zoom Tan a Notice of Monetary Default.  (Doc. #46-1, p. 122.)

## III.

The operative pleading is the Amended Complaint (Doc. #23), which asserts one count against Zoom Tan for breach of the Lease Agreement. (Id.)  The Amended Complaint identifies three defaults under the Lease Agreement ("failure to obtain all necessary permits or approvals, open for business, and pay rent and other charges due under the Lease").  (Id. ¶ 31.)  The breach of contract count then identifies one of these as the basis for the claim, i.e., "Zoom Tan has not paid to Landlord the amounts due and owing Landlord under the Lease."  (Id. ¶ 35.)  The Answer asserted that Zoom Tan was not obligated to pay the amounts due and owing to BRE

under the Lease Agreement (Doc. #25, ¶ 35), and asserted fourteen (14) affirmative defenses, (id. at 4-7).

BRE moves for summary judgment on its claim and each of Zoom Tan's remaining affirmative defenses.[5] (Doc. #45.) Zoom Tan moves for summary judgment as to its affirmative defenses of lack and failure of consideration, frustration of purpose, impossibility, and illegality.[6] (Doc. #46.)

The record is undisputed that the parties entered into the Lease Agreement, and that Zoom Tan agreed to pay certain rent and other amounts but failed to do so, resulting in damage to plaintiff. Absent a valid excuse for non-payment or a valid affirmative defense, Zoom Tan is liable to plaintiff.

## A. Other Pertinent Lease Agreement Provisions

Section 1.01 of the Lease Agreement provides that Zoom Tan would use and operate the Premises solely for the purpose of a tanning salon and the incidental retail sale of related tanning

---

[5] Zoom Tan has withdrawn its affirmative defenses of failure to satisfy conditions precedent, statute of limitations, lack of jurisdiction, and laches. (Doc. #49, p. 15 n.3; Doc. #60, p. 10.)

[6] Illegality was not raised as an affirmative defense in the Answer. Whether such an affirmative defense can be argued on summary judgment depends on whether the plaintiff had notice of the defense so that it could adequately defend against it. See Edwards v. Fulton Cty., 509 F. App'x 882, 887 (11th Cir. 2013); Grant v. Preferred Research, Inc., 885 F.2d 795, 797-98 (11th Cir. 1989). Here, it is clear that plaintiff was on notice that defendant would defend on the basis of illegality.

products.[7]  Zoom Tan was required to continuously operate and keep its business open to the public at the Premises for a minimum of 70 hours per week.  Lease Agreement, Section 5.05(a), (b).  Section 5.01(a) of the Lease Agreement provided that this "Permitted Use" was required to be "in full compliance with all governmental rules, regulations and requirements including, without limitation, obtaining and maintaining any and all licenses, permits and approvals necessary for the operation of Tenant's business at the Demised Premises."[8]  Additionally, Section 5.01(b) of the Lease

---

[7] The pertinent portion of Section 1.01 of the Lease Agreement provides in full:

> Subject to the existing tenant exclusive uses and restrictions affecting the Shopping Center set forth in Exhibit "F" attached hereto this Lease, Tenant shall use and operate the Demised Premises solely for the purpose of a tanning salon and the incidental retail sale of related tanning products including UV free tanning products and other related items related to tanning and technological evolutions thereof.

(Doc. #45, ¶ 26; Doc. #45-1, p. 12; Doc. #46-1, p. 61.)

[8] Section 5.01(a) and (b) of the Lease Agreement provides in full:

> (a) Tenant shall use and operate the Demised Premises solely for the Permitted Use set forth in Section 1.01, only under the trade name set forth in Section 1.01 hereof and in full compliance with all governmental rules, regulations and requirements including, without limitation, obtaining and maintaining any and all licenses, permits and approvals necessary for the operation of Tenant's business at the Demised Premises. Tenant shall not use, or permit the use, of the Demised Premises for any other use or purpose whatsoever and shall not operate its business at the Demised Premises,

Agreement provides that the Permitted Use allowed by the Lease Agreement "shall not be deemed or construed to constitute a representation or warranty by Landlord that such business may be conducted in the Demised Premises, or is lawful or permissible under the certificate of occupancy, if any, issued for the building of which the Demised Premises forms a part, or is otherwise permitted by law."[9]

Section 21.01 of the Lease Agreement identified several "Event[s] of Default," the occurrence of which provided the Landlord with certain remedies as set forth in Section 21.02. Included as an Event of Default was non-payment of rent or other monetary amount due under the Lease Agreement within fifteen days after its due date, Section 21.01(a),[10] and failure to cure a non-

or permit any operation, under any other trade name whatsoever.

(b) The Permitted Use, as set forth in Section 1.01 hereof, setting forth the nature of the business to be conducted by Tenant in the Demised Premises shall not be deemed or construed to constitute a representation or warranty by Landlord that such business may be conducted in the Demised Premises, or is lawful or permissible under the certificate of occupancy, if any, issued for the building of which the Demised Premises forms a part, or is otherwise permitted by law.

(Doc. #45, ¶¶ 27-28; Doc. #45-1, p. 20; Doc. #46-1, p. 69.)

[9] See footnote 8 for complete wording of the provision.

[10] Section 21.01, titled "Default," provides in pertinent part: "(a) Failure on the part of Tenant to make payment of Rent or any other monetary amount due under this Lease within fifteen (15) days after its due date." (Doc. #46-1, p. 86.)

monetary violation of the Lease Agreement, Section 21.01(b).[11]
Additionally, it was an Event of Default if Zoom Tan closed for
business "for more than one (1) day during any Lease Year, or for
more than three (3) days in the aggregate during the Lease Term,
when required by this Lease to be open or if Tenant shall abandon
or vacate the Demised Premises." Section 21.01(e).[12] Further, it
was an Event of Default for Zoom Tan to fail "take possession of

---

[11] Section 21.01(b) provides in full:

With respect to a non-monetary violation of this Lease,
failure of Tenant to cure the same within the minimum
time period within which Tenant is required by the terms
of this Lease to cure the violation after Landlord has
sent to Tenant notice of such violation (or if not [sic]
such time period is specified, within fifteen (15) days
after Landlord has sent Tenant notice of such
violation). Tenant shall be obligated to commence
forthwith, to prosecute diligently and continuously, and
to complete as soon as possible the curing of such
violation; and if Tenant fails so to do, the same shall
be deemed to be an Event of Default.

(Id. at 87.)

[12] Section 21.01(e) provides in full:

Excepting only those days on which Tenant is prevented
from remaining open by virtue of strike, fire,
unavoidable casualty or other event beyond the control
of Tenant, (financial inability shall never be deemed to
be an event beyond Tenant's control) and Tenant agrees
to promptly to advise Landlord of any such event and
closing and further agrees to reopen as soon thereafter
as possible, if Tenant shall close for business for more
than one (1) day during any Lease Year, or for more than
three (3) days in the aggregate during the Lease Term,
when required by this Lease to be open or if Tenant shall
abandon or vacate the Demised Premises.

(Id.)

the Demised Premises on the Possession Date," or to fail to "have opened for business on the Commencement Date shall be considered for the purposes hereof to be an abandonment of the Demised Premises by the Tenant and an Event of Default."[13]

The Landlord is provided with all remedies provided by law, plus additional remedies provided by the Lease Agreement. Section 21.02(c) of the Lease Agreement contains an acceleration clause as part of Landlord's Remedies under which the landlord may:

> Treat all or any part of the Rent reserved hereunder as immediately due and payable, it being understood that the method of monthly or other periodic payments provided for herein are for the convenience of Tenant and available to Tenant only if Tenant is not in default under the Lease.

(Doc. #45-1, p. 39; Doc. #46-1, p. 88.)

------

[13] Section 21.01(f) provides in full:

> Excepting only those periods when Tenant is prevented from performing by virtue of strike, fire, unavoidable casualty or other event beyond the control of Tenant, (financial inability shall never be deemed to be an event beyond Tenant's control) and Tenant agrees promptly to advise Landlord of any such event and closing and further agrees to reopen as soon thereafter as possible, the failure of Tenant (i) to take possession of the Demised Premises on the Possession Date, (ii) to proceed diligently and continuously with Tenant's Work, (iii) to complete its initial alterations and equipping of the Demised Premises, or (iv) to have opened for business on the Commencement Date shall be considered for the purposes hereof to be an abandonment of the Demised Premises by the Tenant and an Event of Default.

(Id.)

This case requires the Court to consider and apply Florida contract law. "[A] federal court adjudicating state law claims applies the substantive law of the state." Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 412 F.3d 1224, 1227 (11th Cir. 2005) (citation omitted); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). The Lease Agreement provides that it "shall be construed in accordance with the laws of the state of in which the Shopping Center is located." Section 22.05, Lease Agreement. The Shopping Center is located in Florida.

**B. First Affirmative Defense: Failure to State a Claim**

Plaintiff moves for summary judgment as to defendant's first affirmative defense, which alleges that plaintiff has failed to state a claim upon which relief can be granted for breach of contract. (Doc. #45, ¶¶ 45-48.) Defendant argues that plaintiff's claim fails for lack of consideration because the lease limited the use of the Premises to a tanning salon, which was subsequently prohibited by the City's denial of the permit application and notification that the Permitted Use was in violation of the zoning regulations. (Doc. #46, pp. 7-10; Doc. #49, p. 8.)

Under Florida law, "[a] cause of action for breach of contract has three elements: (1) a valid contract, (2) a material breach, and (3) damages." Havens v. Coast Fla., P.A., 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013). The Complaint adequately alleges all of these elements, and therefore does not fail to state a claim upon

which relief may be granted.  Plaintiff need not rebut affirmative defenses in its complaint in order to state a proper claim. LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).  Accordingly, summary judgment as to the first affirmative defense is granted in favor of plaintiff.

### C. Second Affirmative Defense:  No Default Because of Events Beyond Tenant's Control

Defendant's second affirmative defense of "events beyond tenant's control" relies upon language contained within Section 21.01, subparts (e) and (f), of the Lease Agreement.  Defendant argues that it was excused from: failing to take possession on the possession date, being required to proceed diligently and continuously with its work, completing its initial alterations and equipping of the demised premises, and opening for business on the commencement date because the denial of the permit was an event beyond its control.[14]  (Doc. #25, pp. 4-5; Doc. #49, pp. 8-9.)

Plaintiff has based its breach of contract claim, and damages attributable thereto, upon defendant's failure to pay rent—not upon the other events of default discussed within defendant's second affirmative defense.  By the terms of the Lease Agreement,

---

[14] Upon review of the Lease Agreement, the Court notes that there is a "Force Majeure" clause excusing the Landlord "for the period of any delay in the performance of any obligations hereunder when prevented from doing so by a cause or causes beyond Landlord's control which shall include . . . governmental regulations or controls . . . ." (Doc. #45-1, p. 41.)  There is no equivalent provision for Zoom Tan.

the "events beyond tenant's control" do not excuse defendant's failure to pay rent.   Accordingly, summary judgment as to the second affirmative defense is granted in favor of plaintiff.

### D. Third, Fourth, Seventh, Eighth, and Tenth Affirmative Defenses

Zoom Tan asserts failure of consideration as its third affirmative defense, asserting that Zoom Tan has not and cannot receive the rights, duties, and obligations owed to it by BRE under the Lease Agreement. (Doc. #25, p. 5.)   Zoom Tan asserts that because the intended use of the Premises is prohibited by the local zoning ordinance, there was a failure of consideration for the Lease Agreement, and therefore no valid cause of action for breach of contract.   Based upon the same basic facts, Zoom Tan asserts defenses of frustration of purpose, impossibility, impracticability, and mutual mistake. (Id. at 6.)

Under Florida Law, failure of consideration is the neglect, refusal, or failure of one of the parties to perform or furnish the agreed upon consideration.   Royal Typewriter Co. v. Xerographic Supplies Corp., 719 F.2d 1092, 1107 n.9 (11th Cir. 1983); Wallace v. Ralph Pillow Motors, Inc., 344 So. 2d 949, 950 (Fla 1st DCA 1977); Holm v. Woodworth, 271 So. 2d 167, 169 (Fla. 4th DCA 1972). A line of cases dealing with substantially similar situations has viewed circumstances where the intended use of the property was prohibited by zoning regulations as dealing with a potential

failure of consideration.   See Marks v. Fields, 160 Fla. 789
(1948); 1700 Rinehart, LLC v. Advance Am., 51 So. 3d 535 (Fla. 5th
DCA 2010); E. Coast Advert., Inc. v. Wiseheart, 862 So. 2d 734
(Fla. 3d DCA 2003); La Rosa Del Monte Express, Inc. v. G.S.W.
Enters. Corp., 483 So. 2d 472 (Fla. 3d DCA 1986) ("La Rosa").

    In Marks, the Florida Supreme Court addressed a situation
where the parties entered in to a lease agreement for a vacant lot
the plaintiffs intended to use in the sale of automobiles. 160
Fla. 789.  On rehearing, the Florida Supreme Court stated that
where "the parties contracted for the use of a property which use
was not allowed by law[, w]hether both or either knew of such
zoning law makes no difference because the consideration wholly
failed and the money paid for the contract should be returned and
the parties mutually released." Id. at 794.

    In La Rosa, the landlord brought an action against tenant to
recover amounts due under an acceleration clause in a lease arising
out of tenant's abandonment of the premises, and the tenant had
been operating a moving and storage business on the leased
premises.   483 So. 2d 472.   The lease limited the use of the
property to the moving and storage business. Id. at 473.  After
two years of using the premises for its moving and storage
business, tenant was served a notice of violation by the City of
Miami, ordering it to cease operations immediately because the use
of the property violated the city's zoning regulations. Id.  The

Third District Court of Appeal found the situation "virtually identical to the Marks case." Id. The court stated that it was uncontradicted that the use of the property violated the City of Miami's zoning ordinances and, accordingly, found "the lease wholly [] lacking in consideration." Id.

In Wiseheart, the parties entered into a lease agreement for property that the lessor intended to use for the erection of a billboard. 862 So. 2d 734. At the time the parties entered into the agreement, the lessees knew of zoning restrictions preventing a billboard from being erected on the property. Id. at 735. In light of such knowledge, the lessee "bargained on that basis with the expectation that the lessees would see that the restrictions were removed" and "specifically eliminated a clause in the proposed lease which would have permitted the lessees to escape from its provision if they were unable to use the property as contemplated." Id. The court ultimately ruled in favor of lessor due to the fact that lessee had knowledge of the zoning restrictions, yet entered into the lease despite said knowledge. Id.

Lastly, in 1700 Rinehart, the court reversed a holding that a lease was invalid for lack of consideration, finding instead that the lessor properly terminated the lease pursuant to a provision within the lease agreement allowing for termination if the intended use was in violation of the zoning regulations. 51 So. 3d 535. The court discussed failure of consideration as

encompassing frustration of purpose and stated that the provisions of the lease contemplated the permit being denied, thus such an event was foreseeable and could not be the basis for the defense of failure of consideration. Id.

The Court finds the underlying facts of this case most similar to those in Wiseheart and 1700 Rinehart. Zoom Tan assumed the risk that its intended use of the Premises may be prohibited by law. Within Section 5.01, subpart b, BRE explicitly indicated that it did not warrant that the use contemplated by the Lease Agreement would be "lawful or permissible under the certificate of occupancy, if any, issued for the building of which the Demised Premises forms a part, or is otherwise permitted by law." (Doc. #45-1, p. 20; Doc. #46-1, p. 69.) Accordingly, the possibility that the use would be prohibited was not only foreseeable, but brought to defendant's attention.

Zoom Tan alleges that it was unaware that the use of the Property as a tanning salon was prohibited, and points to the fact that another tanning salon within the same zoning district was either in use or under construction. But Zoom Tan only alleges that it confirmed the denial of the permit with the City, and does not assert it appealed the denial or sought a variance to use the Premises as a tanning salon. Additionally, Bob Dake with BRE sent correspondence to Zoom Tan stating, "We have found the contact in Marco that we believe will give you the best shot at getting your

use restriction lifted.   Good luck!" (Doc. #46-10, p. 2.)   In response, Zoom Tan replied: "We have no interest in spending money on attorneys plus we will Miss most of our season now." (Id.)   It appears here that Zoom Tan simply made a business decision to not appeal the permit denial or seek a variance.

Accordingly, based upon the undisputed facts, the Court finds as a matter of law defendant cannot establish its third affirmative defenses of failure of consideration.  For the same reasons, the Court finds that defendant cannot establish its Fourth Affirmative Defense of frustration of purpose based upon the Zoning Board's conduct; its Seventh Affirmative Defense of impossibility based upon the action of the Zoning Board; its Eighth Affirmative Defense of impracticability due to unforeseen circumstances; and it Tenth Affirmative Defense of mutual mistake.  Summary judgment on these affirmative defenses is granted in favor of plaintiff.

### E. Fifth and Ninth Affirmative Defenses:   Failure to Mitigate and Unjust Enrichment

Plaintiff moves for summary judgment as to defendant's fifth affirmative defense of failure to mitigate and ninth affirmative defense of unjust enrichment. (Doc. #45, pp. 13-15, 18-19.)

Under Florida law, a lessor has an election of three alternative courses of action when the lease is breached by a lessee:

> The lessor may treat the lease as terminated and retake possession for his own account, thus terminating any

> further liability on the part of the lessee; or the
> lessor may retake possession of the premises for the
> account of the lessee, holding the lessee liable for the
> difference between rental stipulated to be paid under
> the lease agreement and what, in good faith, the lessor
> is able to recover from a reletting; or the lessor may
> stand by and do nothing, holding the lessee liable for
> the rent due as it matures, which means all remaining
> rent due if there is an acceleration clause and the
> lessor chooses to exercise the right to accelerate.

Coast Fed. Sav. and Loan Ass'n v. DeLoach, 362 So. 2d 982, 984

(Fla. 2d DCA 1978) (citations omitted); see also Jimmy Hall's

Morningside, Inc. v. Blackburn & Peck Enters., Inc., 235 So. 2d

344, 345 (Fla. 2d DCA 1970). "[T]hese remedies are not established

as the sole remedies which may be provided for lease breaches, but

are intended to supply remedies when none are provided in the lease

or when broader contractual lease remedies violate public policy."

Chandler Leasing Div., Pepsico Serv. Indus. Leasing Corp. v. Fla.-

Vanderbilt Dev. Corp., 464 F.2d 267, 271 (5th Cir. 1972). The

Lease Agreement contains remedies similar to those provided by law

in Florida, and also contains an acceleration clause that was

invoked by BRE. (Doc. #45-1, pp. 38-39.)

Acceleration clauses are valid and enforceable in Florida.

Jimmy Hall's Morningside, Inc., 235 So. 2d at 345 (citation

omitted). Invocation of an "acceleration clause does not terminate

the lease. It merely requires payment of all future rent in

advance." Quintero-Chadid Corp. v. Gersten, 582 So. 2d 685, 689

(Fla. 3d DCA 1991) (citation omitted). Therefore, "[t]he fact that

the lease contained an acceleration clause in no way excuses the lessor from applying the proceeds from a reletting to mitigate the damages due from the breaching lessee." <u>Jimmy Hall's Morningside, Inc.</u>, 235 So. 2d at 345. It is clear that under Florida law, if BRE goes back into possession of the Property and relets it, it must give Zoom Tan credit for the rents received if the Property is relet.

Zoom Tan first asserts that BRE has failed to mitigate its damages by failing to "exercis[e] reasonable diligence by re-letting" the Property. (Doc. #25, pp. 5-6.) The sworn declaration of Joshua Durigan, BRE's Senior Leasing Representative, shows the efforts made by BRE in finding a replacement tenant for the Property. (Doc. #45-2.) These efforts included: listing the Property as available on Brixmor's website and on Loopnet; marketing and promoting the Property at industry based trade shows, including International Council of Shopping Centers and Retailer Live; directly marketing the Property to prospective tenants, including Dana Tyler Jewelry; showing the property to prospective tenants, including Island Cigars, Audiology Group, Shrimp Blues Bistro, Freshi franchisee, Quickly franchisee, and C'est la Vie. (<u>Id.</u>) The declaration further provides that despite the efforts, BRE has been unable to find a replacement tenant. (<u>Id.</u> ¶ 10.) The declaration is dated December 29, 2015. (<u>Id.</u> at 3.) The Court

finds these efforts demonstrate that BRE has made a good faith effort to relet the Property.

Zoom Tan also asserts the affirmative defense of unjust enrichment, claiming that "the relief requested, the entire accelerated rent, would result in the Plaintiff being unjustly enriched." (Doc. #25, p. 6.) Florida law is clear that a lessor is prohibited from retaining accelerated rent *and* proceeds from reletting. Jimmy Hall's Morningside, Inc., 235 So. 2d at 345-46. Zoom Tan cannot prevail on its affirmative defense of unjust enrichment because there is no evidence BRE has done both, and summary judgment is granted in favor of plaintiff.

**F. Twelfth Affirmative Defense: Unconscionability**

Zoom Tan's twelfth affirmative defense alleges unconscionability in that plaintiff's "interpretation of the Lease involves unfair shifting of risk, obligations, and duties, and would render the Lease illusory." (Doc. #25, p. 7.) This affirmative defense fails.

Unconscionability refers to a concept that courts utilize to prevent the overreaching by one party to gain "an unjust and undeserved advantage which it would be inequitable to permit him to enforce." Basulto v. Hialeah Auto., 141 So. 3d 1145, 1157 (Fla. 2014) (citation omitted). There are two types of unconscionability: procedural and substantive. "The absence of meaningful choice when entering into the contract is often referred

to as procedural unconscionability, which relates to the manner in which the contract was entered, and the unreasonableness of the terms is often referred to as substantive unconscionability, which focuses on the agreement itself." Id. (footnote omitted) (citations omitted).

Here, Zoom Tan, not BRE, held the four other leases over BRE's head during negotiations of the Lease Agreement. (Doc. #45-1, p. 76) ("this will effect all the brixmo deals"). There is no other allegation of overreaching or exertion of improper influence during the course of negotiations. Both parties are sophisticated parties with histories of entering into these types of agreements. Plaintiff operates the shopping center where the Property is located, and in other states, and has entered into leases with other entities. (Doc. #45, ¶ 9.) Defendant "operates and maintains tanning salons in multiple states." (Doc. #25, ¶ 5; Doc. #45, ¶ 9.) This is not the type of situation that requires the use of unconscionability to prevent overreaching by one party over another. Accordingly, the Court finds that there is no genuine issue as to any material fact and plaintiff is entitled to summary judgment as to defendant's affirmative defense of unconscionability as a matter of law.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's Unopposed Requests for Judicial Notice (Docs. ##51 and 59) are **GRANTED;**

2. Plaintiff's Motion for Summary Judgment (Doc. #45) is **GRANTED;** and

3. Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. #46) is **DENIED.**

4. Judgment shall enter in favor of plaintiff and against defendant in the amount of $252,796.52, plus interest, attorney fees, and costs.  The Court shall retain jurisdiction through the end of the lease term to consider a motion for an accounting relating to proceeds obtained from reletting the leased premises during the remainder of the lease term.

5. The Clerk shall terminate all remaining deadlines, including the trial term, and close the file.

6. Non-Party's Richard D. Yovanovich, Esquire, Motion to Quash Subpoena to Appeal at Trial (Doc. #69) is **DENIED AS MOOT.**

**DONE and ORDERED** at Fort Myers, Florida, this ___28th___ day of April, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record